DONALD M. DEMONT ET AL., APPELLEES, V. GEORGE ABBAS, APPELLANT, JOHN DIETZ ET AL., INTERVENERS, APPELLEES.

32 N. W. 2d 737

Filed June 11, 1948.   No. 32348.

*Collins & Collins,* for appellant.

*Guy E. Tate,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is a suit for an injunction to enjoin the defendant from building, operating, or maintaining a rendering plant on a tract of land in Sarpy County.  The trial court granted the injunction and defendant appeals.

The plaintiffs allege that in the operation of a rendering plant at the place selected, the air will be filled with noxious exhalations and noisome and offensive smells and odors, which will be injurious to the health of plaintiffs and others in the community; that it will result in the pollution of the Papillion Drainage Ditch; that it

will attract flies and vermin to the injury of the health of plaintiffs and others in the vicinity; and that it will decrease the value of plaintiffs' properties as residences. Claiming that it will constitute a continuing nuisance, plaintiffs pray that the construction of the rendering plant be permanently enjoined. The petition of the interveners alleges the same facts and seeks the same remedy as the plaintiffs.

Defendant admits his intention to construct and operate a rendering plant at the place alleged in the petition. He denies that it will be a nuisance and alleges that it will be a modern plant operated in the most scientific manner in compliance with the laws of the State of Nebraska regulating the operation of such plants.

The evidence shows that the place where the rendering plant is to be constructed is in a rural locality and that it has none of the attributes of an industrial area. In addition to the neighboring farms there are several acreages of approximately seven acres each within one-half mile of the proposed site.

The evidence further shows that in the operation of the rendering plant, dead and diseased hogs, horses, cattle, and sheep will be conveyed to said plant for processing, necessarily resulting in accumulations of flies. There is also evidence that in the process of separating the fats from the flesh of the dead animals, at numerous times each day, offensive odors and gases would escape from the building which would affect the comfort and enjoyment of plaintiffs, depending upon wind direction and atmospheric conditions existing at the time. The record shows also that approximately 200 gallons of water per minute would be dumped into Papillion Drainage Ditch during the operation of the plant, which water includes some solid matters and gases which would tend to pollute the stream and neighboring atmosphere.

The evidence shows that the petitioners and interveners reside between one-quarter and one-half mile from the site where the plant is to be located. The acreages

used for residence and gardening purposes are almost one-half mile from the proposed site of the rendering plant. Very few people reside in the immediate vicinity of the place where the plant is to be constructed. Livestock feeding and general farming operations are the chief avocations in the immediate neighborhood of the plant.

The defendant produced evidence to the effect that he proposed to construct and operate a most modern dry processing rendering plant. He says the factory will be screened against flies to the extent possible, and that the water and gases emptied into Papillion Drainage Ditch will be released under water and will not be noticeable to persons in the community. He testifies that the plant will be clean and sanitary, and will not be injurious to plaintiffs or others in the vicinity. He states that he will comply with all laws and regulations imposed upon the business of processing dead animals for hides, fats and tankage. His evidence as to the method of conducting the plant is corroborated by others familiar with the business.

Generally, an owner of property has a right to make any use of it he sees fit. It is only where his use prevents his neighbors from the enjoyment of their property to their damage that an owner's use may be restricted. The burden rests upon the one complaining to establish that the use to be made of the property must necessarily create a nuisance.

In the present case, the rendering plant has not been built. No nuisance could have existed on the premises at the time this action was filed. The prayer of the petition is based on the anticipated use which the defendant intends to make of it. To justify the issuance of an injunctive order against an anticipated nuisance it must be shown that the anticipated use of the property will be a nuisance per se, or that under the circumstances of the case a nuisance must necessarily result from the contemplated use of the property. A render-

ing plant is not a nuisance per se when constructed in a rural area as here shown, and the plaintiffs do not contend to the contrary. The question for determination is whether, under the circumstances shown, the building of the rendering plant would necessarily result in a nuisance. Brown v. Easterday, 110 Neb. 729, 194 N. W. 798; Pennsylvania Co. v. Sun Co., 290 Pa. 404, 138 A. 909, 55 A. L. R. 873. If the thing which it is sought to restrain is not a nuisance per se, and will not necessarily become a nuisance, but may or may not become such, depending upon the use, manner of operation, or other circumstances, the remedy of injunction is not available.

The location for the proposed rendering plant is on a tract of land consisting of 52 acres, bounded on the north by the county line between Douglas and Sarpy counties, and on the east by the Papillion Drainage Ditch. The west side is bounded by Papillion Creek. The proposed plan is to build the plant at the south end of the tract about 200 feet from the Papillion Drainage Ditch. Into the plant will be hauled the "dead animals, offal, or whatever we will get." The dead animals are then skinned, cut up, and put into the cooker for four to six hours. The defendant admits that the overloading of the cooker will result in the escape of odors. The vent from the cooker is to run into the Papillion Drainage Ditch and its contents released under water. The defendant admits also that, during the process of transferring the "cook" to the presses, odor is bound to escape for approximately 15 minutes during each transfer. He admits that some flies will gather at this plant whatever attempt to eliminate them is pursued. Rodents and vermin have a tendency to gather at such a place.

The operation of a rendering plant is a lawful business, although it is licensed under the laws of this state. §§ 54-736 to 54-741, R. S. 1943. The defendant has expended $15,000 in the purchase of the land upon which the plant is to be erected. The rule is well established that an anticipated nuisance cannot be enjoined, unless

it be a nuisance per se, except by evidence that injury is actually threatened and practically certain to result if the improvement is made. If the evidence be doubtful, eventual or contingent, an injunction will not issue. It takes more than mere apprehension or probability to make a case. The proposed site is from one-quarter to one-half mile from the homes of the plaintiffs and interveners. It is in an area which is more rural than urban in character. The evidence that the claimed injuries are certain to occur is very doubtful. Some odors will emanate from this plant at times, but we are unable to say from this record that a nuisance will necessarily result therefrom. Proper equipment and efficient management may eliminate the objectionable features. We are of the opinion that the evidence is insufficient to show that the erection and operation of the rendering plant under the situation and circumstances herein recited will necessarily result in a nuisance. It may or may not become such. Therefore, an injunction cannot properly issue. It follows that the judgment of the district court should be reversed and the cause dismissed.

REVERSED AND DISMISSED.