MARGARET PRAUNER ET AL., APPELLEES, v. THE BATTLE CREEK COOPERATIVE CREAMERY ET AL., APPELLANTS.
113 N. W. 2d 518

Filed March 2, 1962. No. 35092.

*Jewell & Otte,* for appellants.

*James F. Brogan* and *Thomas E. Brogan,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action to enjoin the construction and operation of a bulk petroleum plant. The trial court granted a permanent injunction and the defendant appealed.

The question involved is whether construction and operation of a bulk petroleum plant, in conformity with the rules and regulations of the State Fire Marshal, which plant will be located outside the corporate limits of the village of Battle Creek but across the street from the residences of the plaintiffs which are within the corporate limits of the village, necessarily creates a nuisance, where the character of the neighborhood is not strictly residential but is mixed commercial, agricultural, and residential, and where the residences of the plaintiffs are 123 feet and 168 feet from the proposed plant.

Essentially, plaintiffs' petition alleged that they would be irreparably damaged by the construction because of unsightly tanks, annoying odors, noisy commercial vehicles, and the storage of liquid petroleum. They alleged that their property would be greatly depreciated; that they would be subjected to the constant danger of fire and explosion; that their rest would be greatly disturbed; and that their health would be impaired.

Plaintiff, Mrs. Margaret Prauner, is the owner of and is living on Lots 1 to 5, Block 1, Highlawn Addition to Battle Creek, Nebraska. This property is bounded on the west by State Highway No. 121 and on the south by Park Avenue. The house on said property is 30 feet north of Park Avenue and 23 feet east of State Highway No. 121. Plaintiff purchased this property at auction in September 1959, for $7,000. At that time and for more than 10 years previously, one Victor J. Klein, hereinafter referred to as Klein, operated a petroleum bulk storage plant 254 feet northwest of the house on the property. This plant is 125.5 feet west of State Highway No. 121. Klein also maintains a storage tank on said property for a propane gas business operated by him. This tank is 212 feet northwest of the Margaret Prauner residence. There is another house north of the Margaret Prauner residence, which is 216.5 feet east of the Klein bulk plant.

The plaintiffs Herman F. Praeuner and Lenora Praeuner, husband and wife, hereinafter designated as Herman Praeuner, own lots 6 to 15 in the same block, which lots adjoin the Margaret Prauner lots on the east. This property faces on Park Avenue, and the west boundary of lot 6, which is the east line of Margaret Prauner's property, is 138 feet from State Highway No. 121. The corporate limits of the village of Battle Creek constitute the south boundary of both properties, so that Park Avenue, which is 60 feet wide, is entirely outside of the corporate limits of the village of Battle Creek. Block 2 of Highlawn Addition, which the defendants have agreed to purchase and on which they propose to operate the petroleum bulk plant, is bounded on the west by State Highway No. 121 and on the north by Park Avenue. The proposed construction will be in the northwest corner of block 2.

Herman Praeuner built his home in 1949 on lots 7 and 8 at a cost of $10,000. The Klein bulk storage plant was then in existence but it was at least 350 feet northwest

of the Herman Praeuner home. He built a garage approximately 5 years later on lot 6 to the west of his home at a cost of $425.

There is a tin shed or warehouse located at the rear of the property on which defendants propose to operate their bulk petroleum plant, which was erected about 1954, and was used by the plaintiff, Herman Praeuner, to store livestock feeds when he was in the feed business. Defendants have used the warehouse to store dry fertilizer since 1958. This shed, which is directly south of lots 6 and 7 of Herman Praeuner's property, is 88.5 feet from Park Avenue, which separates the properties, and the entrance to it is directly south of the Herman Praeuner garage. This shed is approximately 140 feet east of State Highway No. 121.

Exhibit 7 shows a natural gas substation is located in the northwest corner of the property adjoining the proposed storage construction area. This natural gas substation is approximately 40 feet south of the proposed construction. There is also a public park in the block to the east of block 2. The nearest fireplace in the park is approximately 100 feet from the southeast corner of block 2. The southeast corner, however, is over 200 feet southeast of the proposed construction. The nearest shelter area in the park is 310 feet from the southeast corner, and the park playground is 643 feet from the same point. The evidence does not indicate whether the park is or is not outside of the corporate limits of the village, although Park Avenue and block 2, which is west of the park, are outside the corporate limits.

The defendants have agreed to purchase the present bulk storage plant, which they are now operating, from Klein, and propose to move it to the proposed site. The present plant is located 119 feet southwest of the Klein home. They are not purchasing the propane tank which is 62 feet south of the Klein home. This Klein will continue to use in his business.

The defendants plan to place the bulk petroleum plant on the property so that the north tank (the one closest to the plaintiffs) will be 33 feet from the north line of the property. This will put it 123 feet directly south of the Margaret Prauner house and 168 feet southwest of the Herman Praeuner house. The west tank will be 27 feet east of the west line and the loading dock will be 25 feet from the nearest tank. The main entrance to the site will be from State Highway No. 121, at the extreme southwest corner of block 2. There are now two entrances from the site to Park Avenue. The capacity of the plant, if moved, will be 30,000 gallons. The capacity of the present plant is 29,000 gallons, but while operated by Klein its maximum annual volume was between 90,000 and 100,000 gallons. Defendants, in September of 1960, the first month of their operation of the present plant, had a volume of 20,000 gallons.

This action, being one for a permanent injunction, will be heard de novo on appeal. When an action in equity is appealed, it is the duty of this court to try the issues de novo and to reach an independent conclusion without reference to the findings of the district court. Probert v. Grint, 148 Neb. 666, 28 N. W. 2d 548.

As we view the evidence, the area involved is not strictly residential. There have been two, and if we consider the propane tank separately, three commercial enterprises there for several years. One was there before either of the plaintiffs acquired their homes and one was used by one of the plaintiffs for commercial purposes 5 years before another of the plaintiffs acquired her home. The area involved is outside the corporate limits of the village and no zoning ordinances are in any way involved.

Plaintiffs contend that the proposed construction will violate the rules and regulations of the State Fire Marshal as respects the requirements for diking. By stipulation, the parties agreed that the State Fire Marshal had given preliminary approval to the layout and design of

the bulk plant at the approved site, and that the defendants in obtaining such approval had followed the procedures set forth by regulation of his office. The evidence of the defendants is that they intend to fully comply with all requirements made by the State Fire Marshal. In any event, we can assume at this stage that the State Fire Marshal will not finally approve a construction which does not conform with all the requirements of his office.

The law has determined that some businesses are, under certain conditions, nuisances per se. In this automotive age, the courts are unanimous that the storage of petroleum products is not a nuisance per se. Nebraska recognized this rule as early as 1923 in the case of Brown v. Easterday, 110 Neb. 729, 194 N. W. 798, which involved a service station in a residential district in the city of Lincoln. In that case, we held: "* * * automobiles being of general use, and public gasoline supply stations being essential, their erection in a residence district is not a nuisance per se."

Where, as here, it is sought to enjoin an anticipated nuisance, it must be shown: (1) That the proposed construction or the use to be made of the property is a nuisance per se; or (2) that, while it may not amount to a nuisance per se, under the circumstances of the case, a nuisance must necessarily result from the contemplated act. See, Annotation, 55 A. L. R. 882; Demont v. Abbas, 149 Neb. 765, 32 N. W. 2d 737. The plaintiffs concede that a bulk petroleum plant is a lawful business and not a nuisance per se, but do contend that it may become a nuisance by reason of its location in a residential neighborhood and in close proximity to a public park.

One of the principal contentions in Brown v. Easterday, *supra,* was that the location in question was a purely residential district, which should not be invaded by a service station. We said: "A sufficient answer would seem to be that, in the absence of legislation dividing the city into zones and having a general application to all

property within the respective sections, it is not within the power of the courts to interfere with the lawful use of property by the owner."

Generally, an owner of property has a right to make any use of it he sees fit. It is only where his use prevents his neighbors from the enjoyment of their property to their damage that an owner's use may be restricted. The burden rests on the one complaining to establish that the use to be made of the property must necessarily create a nuisance. Demont v. Abbas, *supra*.

From the time of Aldred's Case, 9 Coke 57b, 77 Eng. Rep. R. 816, which involved a pigsty near the plaintiff's residence, it has been a settled rule of this country and of England that a man had no right to maintain a structure on his own land which made that of his neighbor dangerous, intolerable, or uninhabitable, or as said in Camfield v. United States, 167 U. S. 518, 17 S. Ct. 864, 42 L. Ed. 260: "No person maintaining such a nuisance can shelter himself behind the sanctity of private property." The plaintiffs sum up their position in a quotation from Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 154 A. L. R. 1016: "A nuisance may be merely a right thing in the wrong place,—like a pig in the parlor instead of the barnyard."

There is no single arbitrary rule governing cases of this class. Each case must be determined by the facts and circumstances developed therein. Beisel v. Crosby, 104 Neb. 643, 178 N. W. 272. There can be no question either but that a court of equity has jurisdiction to enjoin use of property which violates the accepted rule of decency and substantially depreciates the value of the adjoining property. Sarraillon v. Stevenson, 153 Neb. 182, 43 N. W. 2d 509, 18 A. L. R. 2d 1025.

As suggested, we are concerned here with an anticipatory nuisance. For this reason, we must remember that a court of equity will not usually enjoin the operation of a lawful business without regard to how serious may be the grievance caused thereby. In the first instance, at

least, it will require the cause of the grievance to be corrected and will enjoin conduct of the enterprise perpetually after it has been proven that no application of endeavor, science, or skill can effect a remedy or that the owners cannot be induced to conduct it properly. Mathews v. Mozer, 111 Neb. 71, 195 N. W. 943; State ex rel. Towle v. Eyen, 130 Neb. 416, 264 N. W. 901.

Analyzing the instant case in the light of the foregoing discussion, we conclude that the plaintiffs are unduly disturbed about the situation which confronts them. We will discuss in detail the principal factors of which the plaintiffs complain.

Considering first the allegation of the depreciation of the property values. To this we say that the depreciation of the values of adjoining property by the operation of a lawful business of itself furnishes no ground for injunction for the legal remedy would be adequate. Brown v. Easterday, 110 Neb. 729, 194 N. W. 798. Here the evidence of depreciation is disputed. Some of defendants' witnesses thought the area would be benefited. The present petroleum bulk plant is unsightly. Volunteer trees, shrubs, and weeds now grow on the proposed construction site. In view of the present character of the area, there is a possibility that the proposed construction may actually improve the physical appearance of the neighborhood. We are not persuaded that the value of plaintiffs' property will be substantially affected. In any event, there is insufficient evidence to justify an injunction.

The expert called by the plaintiffs referred to the constant hazard of fire and explosion. We have reviewed his testimony with interest, and note that he does not believe the State Fire Marshal's regulations go far enough, and that he specifically does not approve of the regulations in this particular case. We believe, however, that the testimony of defendants' witness, who has been familiar with and closedly identified with the operation of 650 bulk storage outlets in 8 or 10 states

for the past 15 years, is more in accord with the realities of the situation in this industrial age. While the plaintiffs' expert suggested many potential hazards, except for an act of God and faulty equipment, they all would involve carelessness. If properly stored, petroleum products can be safely stored. We might further observe that regardless of safety measures attempted, we still must consider the human equation, that of carelessness. In the absence of evidence to the contrary, however, we must assume that the plant will be operated within all of the accepted safety limits.

The evidence is undisputed that the construction will have no effect on fire insurance rates on the property of plaintiffs. Plaintiffs' own insurance agent testified that a bulk plant, with a 42,000-gallon capacity, which is 12,000 gallons more than involved herein, would not affect fire insurance rates after 50 feet. The plaintiffs are 123 feet and 168 feet away. Defendants' witness testified that there had only been 3 fires in 15 years in the 650 bulk plants served by his company in an 8 or 10 state area, and that in each instance these fires were confined to the premises involved. It is true that plaintiffs' witnesses were concerned about a fire shortly before the trial in a bulk plant in Stuart, Nebraska. A newspaper account, exhibit 15, indicates that the fire started when one of the proprietors was filling a gas tank while smoking a cigar. Exhibit 16 is a newspaper note on two other oil fires in Kansas City in August of 1960. Fires do occur, not only in oil storage plants or service stations, but also in other businesses dealing in materials which may be combustible, particularly where carelessness is involved.

The storage of petroleum products is one of the hazards of our present civilization. Recent cases would indicate that it is not the amount stored but rather the manner of its storage which determines the question of danger therefrom. If stored in approved scientifically constructed tanks, it is not considered dangerous. There

was evidence that the defendants expect to use the present tanks but only if they are approved by the State Fire Marshal. We conclude the apprehension of danger is too speculative in this case to sustain the basis of equitable interference.

The law is well settled that devoting property to uses which produce destructive vapors and noxious odors, where it results in material injury to property and the comfort or existence of those in the immediate vicinity, is a nuisance which may be enjoined. See Sarraillon v. Stevenson, 153 Neb. 182, 43 N. W. 2d 509, 18 A. L. R. 2d 1025. In that case we said: "A legitimate business conducted in a residential neighborhood that pollutes or contaminates the air through noisome and noxious odors created by it, that by noises emanating from it disturbs the peace, quiet, and comfort of the residents thereof, and injuriously affects property rights of adjoining and nearby property owners, is a nuisance in fact." That case involved the operation of a slaughterhouse, stockyards, and a cold storage or locker plant in Nebraska City. The court enjoined the operation of the slaughterhouse and stockyards, but not the cold storage or locker plant. Eight of the plaintiffs occupied residences in the same block as the defendants' business. The other plaintiffs owned and occupied homes in the immediate vicinity of the business.

For odors to be a nuisance, they must be such as offend the olfactories of an ordinary man, and not those of an individual with sensitive and delicate nostrils. The evidence on odors is very sketchy and extremely speculative. The testimony of plaintiffs' expert is that even if properly constructed, there would be an ever-present hazard of fumes from the bulk plant which could nauseate a person and make him ill. This witness was concerned about structural failures in the tanks, and testified that he had known of such occurrences but did not particularize. Assuming the situation to be as prevalent as the witness would have us believe, what

we have said with reference to the hazard of fire would still be applicable. We are convinced that if the equipment is of an approved standard and all necessary precautions are taken, the danger suggested is minimized to the point of a very remote possibility.

There is evidence, however, that on occasions there will be limited amounts of vapor escape during the loading process, and that if the wind is in the right direction there is a possibility that the odor may reach the premises of the plaintiffs. There is also evidence that modern equipment does retard the escape of odor even in this instance. We are dealing with anticipated odors. There is no evidence that the present bulk plant has been offensive. True, the new plant will be situated south of the plaintiffs, and the testimony is that the wind blows 55 percent of the time from the south and 45 percent of the time from the northwest. In the area involved, we cannot see that there will be a sufficient possibility of noxious odors to warrant the issuance of an injunction.

. Plaintiffs also complain of the anticipated increase in the volume of noise because of the expansion of the business of the bulk plant by the defendants. Margaret Prauner in her cross-examination admitted that she had not heard any noise in the loading or unloading at the present site. In her rebuttal testimony, over a month later, she testified that she paid particular attention to the loading and unloading operations. She heard a grinding noise for 45 minutes on one occasion, when a large tank truck was unloaded. On occasions she heard a grinding noise for 15 minutes when the defendants' delivery tank truck was loaded, and once in a while she heard noises when wrenches were used. We do not believe that the noise is of sufficient intensity and duration to constitute a nuisance in the area involved.

Plaintiffs further complain of the possibility of the increase of traffic because of the anticipated increase in

the volume of defendants' business. State Highway No. 121 appears to be a main highway to Norfolk, and has always carried considerable automobile and truck traffic. It was doing so when the plaintiffs acquired their properties. Property such as that in question, outside of the village limits, is ideal for certain types of commercial property. We see no merit to plaintiffs' complaint.

The last contention we will consider is the location of the plant between residence properties and a public park. We suggest that the area involved is not strictly residential. A bulk petroleum plant has been operated in the area for many years. As to the reference to the public park, we find no evidence that would even indicate that the proposed construction could be detrimental to the operation of the park.

From a detailed analysis of the various factors complained of by the plaintiff, we have come to the conclusion that there is no sufficient evidence to permit this court to find that the proposed construction is a nuisance in fact.

For the reasons given above, we determine that the finding of the trial court was erroneous, and that the judgment should be reversed and the action dismissed.

REVERSED AND DISMISSED.

SIMMONS, C. J., participating on briefs.