KUHN v WOOD et

Ohio Appeals, 2nd Dist, Montgomery Co

No 1689. Decided May 27, 1941

Benjamin Horn, Dayton, for plaintiff-appellee.

Harold E. Smock, Dayton, for defendants-appellants.

**OPINION**

By HORNBECK, J.

This is an appeal from a permanent injunction against the defendants. Fifteen errors are assigned, many of which are repetitious and raise the same questions We will consider all errors of substance assigned.

The eighth assignment of error is directed to the overruling of defendant, Stella Wood's demurrer to the petition. We are satisfied that it is good against general demurrer.

At the outset it should be observed that to the petition of the plaintiff no answer was filed and counsel for defendants waived the filing of an answer. So that, under the code all well pled material averments of the ▮ petition are, by failure to answer, admitted to be true.

The court in its discretion could accept the material averments without proof, or could require ▮ testimony, which latter course was adopted. **Dallas v Furneau, 25 Oh St 638.** It further appears from the record that all of the testimony in the bill of exceptions was taken at the time of the hearing of the application for a temporary restraining order and after it had been granted this testimony by agreement was considered upon the merits. There are some few immaterial objections to the admission of testimony but no objection was interposed to the admission of a resolution of the board of health which was pleaded and testified to by Dr. Pansing, Health Commissioner, which action is made the subject of defendant's third assignment of error. Inasmuch as there was no objection or exception to the offering of this resolution in evidence its admission may not be held to be prejudicially erroneous.

Finally, upon the determination of the cause on its merits, no motion for new trial was filed. The ▮ failure to file this motion precludes this court from weighing the evidence. **Weaver, v Columbus S. & H. Valley Ry. Company, 55 Oh St 491, Kepner v Shively, 19 Ohio 296, Ide v Churchill, 14 Oh St 372, Cincinnati H. & D. Ry. Co. v Kassen, 49 Oh St 230, Minnear v Holloway, 56 Oh St 148.**

An examination of the testimony is convincing that it supports the finding and judgment of the trial court that a common law nuisance existed on the premises of defendant, Stella Wood, in particulars as pleaded in the petition. It follows, then, that the ▮ court did not err generally in its final judgment, order and decree or, in granting the temporary restraining order.

We then come to consider the more specific claims directed to the language of the permanent injunction. It will be necessary briefly to refer to the factual situation presented.

Defendant, Stella Wood, was, at the time of the matters complained of, living on Rural Route No. 6 out of Dayton. The place where she resided was referred to by some of the witnesses as Morgan Plat. Just what this title imports does not definitely appear, although, we presume that it was part of a tract of land that was carried as a plat upon the records at the County Recorder's office in Montgomery County. The piece of land upon which Stella Wood lived consisted of some four acres with a frontage of approximately 170 feet and about 1100 feet deep. Other tracts of land and lots in the vicinity were simlar in form to the piece of land occupied by said defendant. The nature of the occupancy of Mrs. Wood does not definitely appear but in any event she was in possession with the right to control the premises and was the owner of the hogs kept on the four acres.

Insofar as we can learn from the record defendant, William Wood, was a sort of a hired man and all of his rights on the premises were secured through Stella Wood, although he was active in delivering the garbage, feeding the hogs, and, though not established, he may have had some interest in them.

Defendant, Stella Wood, had some 51 hogs, a cow, a calf, 5 goats and 2 dogs. A number of the pigs were suckling; from two to five weeks old.

Defendant, William Wood, was in the employ of the A. & P. Grocery in Dayton and his employer gave him the right to take from five of its stores boxes in which produce had been shipped and also to take lettuce, celery, beet tops, cabbage, peaches, apples and potatoes which were not saleable and had been cast aside by the Grocery Company. Much of this dry refuse or garbage was hauled to the premises of defendant, Stella Wood, by William Wood, in covered garbage cans holding about 100 pounds each, as were great numbers of boxes. The boxes were thrown into a huge pile and as placed were presumably found by the court to constitute a fire hazard. The refuse or garbage to the extent of about 500 pounds twice a day was hauled to the premises of defendant, Stella Wood, and there much of it thrown upon the ground and the hogs ate as much of it as they could. That which was not consumed continued to lie on the ground and new refuse was thrown upon it. The natural result obtained. This old garbage, without container, emitted noxious and disagreeable odors especially in the summer time and beyond question became almost unbearable to those who lived in the vicinity of the Woods and especially to two neighbors whose residences were less than 100 feet from the place where this garbage was fed to the hogs. The Smith family frequently became sick and the children caused to vomit as a result of the nuisance.

The original petition set forth a set of facts which, if true, constitute a common law nuisance and also pled an ordinance of the Montgomery County Board of Health as follows:

"That hogs shall not be kept in any village or hamlet in the health district between the 1st day of May and the 1st day of November except when hog pens are so located so as to be distant at least three hundred (300) feet from any building used for human habitation or occupancy other than the residence of the owner of the hogs and that in no instance shall hog pens be allowed to become a public nuisance."

and it was averred that this ordinance was violated by the defendants. To meet the necessity of establishing the application of this ordinance to the facts pled plaintiff was permitted to amend his petition by inserting that "Morgan Plat where defendants resided contains approximately 24 inhabited dwelling houses within a radius of 50 to 150 feet from each other." The constitutionality of this ordinance is questioned as is its application to the facts.

# 268

We are satisfied that it has no application in this case because, though pled imperfectly, it does not appear in proof that the premises occupied by the defendants were either in a hamlet or a village and the ordinance purports to have application to hamlets or villages only. No such designation as a hamlet is found in our code. Webster defines it specifically as a small group of houses in a village. There is nothing to establish that defendants' tract was in an organized or incorporated village and Dr. Pansing testifies that it is not in an incorporated village. So that, this ordinance cannot be found to have been violated and as such can be given no application in the terms of the injunction order. But the trial judge predicated the injunction upon the finding that there was a common law nuisance proven and the order may be supported, if reasonable, even though it includes some of the prohibitions which would have been applicable if the ordinance was valid and controlling.

The second ordinance or resolution which is pleaded and its violation asserted is as follows:

"Whoever, during the months of May, June, July, August, or September in each year shall permit garbage to be conveyed to and/or deposited upon his premises, but not including such as may result from his own production, shall be deemed thereby to be causing and/or maintaining a nuisance per se."

The Director of Health in defining the meaning and scope of the regulation said that it was effective and had application, if the garbage was deposited on land similar in size to city lots but where acreage is involved it would not apply. Of course, no such interpretation can be properly placed upon a regulation if it is effective and has the quality of a law.

No objection to the constitutionality of this ordinance was interposed in the trial court. Therefore, █ such claim cannot be the basis of an assignment of error in this court. 2 O. Jur. 204, citing more than 100 cases.

It should also be observed that the Board of Health is not a party to this action and is not prosecuting the defendants. If a factual situation arose which definitely required consideration of the constitutionality of this ordinance, it would indeed present a very interesting question of law because of the conclusion that conveyance or deposit upon any premises of garbage other than produced on the farm, without qualification, shall constitute a nuisance per se.

The acts which may properly be prohibited by the injunction are those, the doing of which will create a nuisance in fact. The defendants have the right to feed their hogs on the four acre tract provided they can do so at █ a place and in such a manner as that it will not create a condition which is a nuisance and offensive to their neighbors. Beyond this they cannot be permitted to go and the purpose of the order of the trial court obviously was to define what they should and what they should not do, so that it would be assured that the nuisance which they had created would not be permitted in the future.

With this in mind and upon the record, we are satisfied that the injunction order should in the main be affirmed but we believe that the effect intended may be accomplished by some modifications of the entry.

The entry as modified will read as follows:

Beginning at paragraph 2, page 2, of the judgment entry in Common Pleas Court as found in the transcript of docket and journal entries:

It is therefore by the court ordered, adjudged and decreed that this cause be now disposed of on the merits thereof as hereinbefore ordered, and it is therefore ordered, adjudged and decreed by the court that said defendants be and are hereby permanently enjoined and restrained at all times from causing obnoxious odors amounting to a nuisance by hauling vegetable

refuse onto their premises, by depositing the same on the ground or in any containers at locations less than three hundred (300) feet from any adjoining residence, or by permitting such refuse after feeding the same to remain in open containers or on the ground at any point.

Defendants are further ordered by the court to move the pile of boxes and broken material now on their premises farther to the rear of said lot at points not less than one hundred (100) feet from their present location and to pile boxes and broken material in a number of smaller piles so that in case of fire being started in any pile the same might be controlled before reaching the other piles. It is further ordered that the defendants be permanently enjoined and restrained from maintaining any hog pens, or feeding any garbage to hogs on their premises at locations less than three hundred (300) feet from the nearest adjoining residence.

And page 3 of the original judgment:

It is further ordered by the court that all other restraining orders, mandatory orders and injunctions heretofore in this case made, not inconsistent with this order, be now and are hereby made permanent. The defendants are further ordered to pay all costs incurred in this cause, for which judgment is awarded plaintiff against defendants, to all of which findings, rulings, orders, judgment and decrees the defendants, by their counsel, except.

It is probable that the order would be effective if addressed to Stella Wood only but, in view of the somewhat uncertain relationship between the parties defendants, we see no material objection in supporting the order against defendant, William Wood.

We have examined all of the errors assigned and with the exception of the modifications of the restraining order herein made, it will be affirmed.

GEIGER, PJ. and BARNES, J., concur.