THOMAS R. KARPISEK ET AL., APPELLEES, V. CATHER & SONS CONSTRUCTION, INC., ET AL., APPELLANTS.
117 N. W. 2d 322

Filed October 12, 1962. No. 35245.

Charles W. Phillips and Lawrence E. Murphy, for appellants.

Davis, Thone, Bailey & Polsky, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This is a suit in equity brought by the plaintiffs Thomas R. Karpisek and Clara A. Karpisek, who are husband and wife, against the defendants Cather & Sons Construction, Inc., and Robert H. Cather, Howard J. Cather, and Howard B. Cather, individually and jointly, in the district court for Lancaster County, to enjoin

them from operating an asphalt plant, and for damages.

Plaintiffs' petition alleges they own two residential properties in Havelock, now Lincoln, Lancaster County, Nebraska, described as Lot 11, Block 39, and Lot 2, Block 66 therein; that Cather & Sons Construction, Inc., is a corporation of which Howard B. Cather is president, Howard J. Cather is vice president, and Robert H. Cather is secretary-treasurer; that the individual defendants are the owners of Block 37, Havelock, in said city of Lincoln on which the asphalt plant is situated and in its operation all the defendants are individually and jointly interested. It sets out that the plant is located approximately 300 feet from plaintiffs' premises; that operations commenced in the spring of 1960 and except in winter it is run during certain parts of the week, and that while operating it emits large amounts of dust, silicon dioxide, and residue which contaminates and pollutes the air around plaintiffs' residence, causing annoyance and damage in several respects pleaded, and which are mentioned hereafter in the discussion of the evidence. It alleges this constitutes a nuisance. The petition prays for damages to plaintiffs' property and that the nuisance be enjoined.

Defendants' answer admits that the individual defendants own the real estate upon which the asphalt plant is located, are officers of the defendant corporation, and that all the defendants have an interest in the operation of the plant. They allege that the plant is located in an industrial area and that it was not operated so as to constitute a nuisance. The rest of the answer is in effect a general denial.

A trial was had in the district court which resulted in a judgment for $150 damages and a permanent injunction enjoining the defendants from operating said plant in such a manner that particles of sand, silicon, or other material coming from the operation are carried onto any part of the plaintiffs' premises.

From an order overruling their motion for a new

trial, the defendants have appealed to this court.

Defendants assign as error, so far as necessary to the determination of the matters presented, that the trial court erred in finding for plaintiffs contrary to the law and the evidence; in finding the plaintiffs to have been damaged in the sum of $150; in finding defendants' acts constituted a nuisance, for which plaintiffs were entitled to injunctive relief; and in finding that when the wind was from the south, southwest, or southeast, particles of gravel and silicon were carried into the atmosphere surrounding plaintiffs' properties.

An examination of the evidence discloses that the defendants' plant is erected on their land directly south of the Burlington Railroad tracks. It is zoned for industrial purposes only. South and east of their premises is an area zoned for residential, school, church, park, and playground purposes where plaintiffs' property is located. Plaintiffs' residential property is about 300 feet south of the asphalt plant facing south on Morrill Street which is paved. Their other premises directly across Morrill Street to the south and facing north are rented.

Manufacture of asphalt requires the asphalt to be mixed with crushed gravel. The gravel is piled on the premises near the plant. The asphalt is heated to a temperature between 270° and 315°. The gravel is then lifted up and tumbled through a dryer which heats it to 300° or 350°. There is an exhaust stack leading from the dryer. A fan located in it pulls off the dust and steam that is taken from the gravel in drying. Some sand must be added to the mixture as a stabilizer. After going through the dryer the aggregate goes through a bin where it is measured and drops into a mixer containing hot asphalt. It is then placed in trucks and hauled away.

Defendants maintain, and introduced evidence tending to show, that dust from unpaved streets and parking lots in the locality surrounding the plaintiffs' prem-

ises, and not the asphalt plant, caused the pollution of the air over the plaintiffs' property. They claim it was colored differently than any emission from the plant. However, it plainly appears that when the defendants' plant started operations in the spring of 1959, there were dust problems. From the stack, and to a certain extent from the two ends of the dryer, dust escaped. This arose in part because of the softness of the mix. At any rate too much dust was escaping.

In May 1961, after complaints had been made from the neighboring householders, a cyclone dust collector was added and in August 1961, a wet wash dust collector was installed.

Before the installation of the wet wash dust collector, plaintiffs' suit was started in June 1961. Although there is some conflict and dispute in the evidence, it seems clearly to substantiate that previously to that time dust settled over a considerable portion of the residential district within at least 2 or 3 blocks of the defendants' asphalt plant. It covered the yards with dust to an extent that plaintiffs could not use the out-of-doors and it was annoying if they attempted to do so. On sweeping a porch or walk an accumulation of a considerable quantity of dust could be obtained. A witness testified he was ashamed to have visitors. It infiltrated their homes and clothing, and settled on the floors, bedding, furniture, and rugs. Windows had to be kept closed. The washings hanging on the line were soiled and cars which were washed had to be rewashed. Buildings that were painted had sand blown on them. The sides of other homes had to be scrubbed because the substance was sticky. Children couldn't play out-of-doors. Their eyes teared and became red and burned. It irritated their throats. A complaint was filed on May 15, 1961, against the defendant corporation in the municipal court of Lincoln for the operation of its plant because of the emission of dust and silica detrimental to public health constituting a public nuisance. On the

trial it was found guilty and fined $100 and costs. The matter was appealed to the district court but when this case was tried the fine had been paid by the company.

After the installation of both the cyclone-type dust collector and water wash, which was procured at a cost of approximately $6,000, the testimony is in irreconcilable conflict as to whether the plant continued to discharge the substances. The defendants' witnesses, including experts on air pollution and the individual defendants and employees, testified the discharge was eliminated. The witnesses for the plaintiffs, however, stated that though there was an improvement it was still quite annoying. An expert for defendants testified he could feel particles hitting his eyes when 50 to 75 feet from the plant. Others living at a greater distance from the plant stated they were still bothered by the same material which got onto their washing and covered the tops of the cars. One said he washed his car and had to do it over again because of it. A newly painted board exposed for a short period had fine particles collected thereon which the plaintiffs' witness testified came from the plant.

In this action the trial court heard and observed the witnesses and its decision indicates it placed credence on the testimony of the plaintiffs' witnesses with respect to the continuance of the discharge of the annoying substance from defendants' plant. "While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying." Olson v. Fedde, 171 Neb. 704, 107 N. W. 2d 663.

Because the evidence is so conflicting and irrecon-

cilable in this particular, this court is constrained to follow the decision of the trial court holding that the condition continued even after the installation of the devices to alleviate it.

The plaintiffs' evidence clearly shows the comfort and enjoyment of their own premises have been substantially interfered with. Where one's business operation as conducted materially and injuriously affects the comfort and enjoyment and property rights of those in the vicinity it becomes a nuisance and may be enjoined. Sarraillon v. Stevenson, 153 Neb. 182, 43 N. W. 2d 509, 18 A. L. R. 2d 1025.

The operation of an asphalt plant was held in City of Omaha v. Hugh Murphy Construction Co., 114 Neb. 573, 208 N. W. 667, to constitute a nuisance and its continued operation under conditions much as disclosed here was in that case enjoined. In that case the action was maintained by the city of Omaha.

The defendants in the case before us maintain that in the instant case the action is brought by a private individual; that the nuisance complained of is a public one; and that a private individual cannot maintain the action in such a case. Under the evidence in this case if it be conceded without deciding that the nuisance is a public one, this court has repeatedly held in such cases that if a private person suffers special and peculiar damage to himself and independent of any damage sustained by the public at large, a court of equity will grant him relief by injunction. Michelsen v. Dwyer, 158 Neb. 427, 63 N. W. 2d 513.

Defendants assert that this rule does not apply to the instant case because of the past decisions of this court. They cite to this effect Ayers v. Citizens Ry. Co., 83 Neb. 26, 118 N. W. 1066, Schroder v. City of Lincoln, 155 Neb. 599, 52 N. W. 2d 808, and other cases holding that in order for a private individual to maintain an injunction suit to abate a public nuisance the injuries sustained by the plaintiff must differ not merely in

degree but in kind from those suffered by the members of the community.

The defendants' argument in this respect seems to be that the residents of the homes and buildings within a radius of several blocks of defendants' plant have suffered the same annoyance and interference with their property as the plaintiffs. They claim the only difference is that those whose premises are closer to the alleged nuisance have suffered more in degree and those further in a lesser degree only. This argument we cannot accept. Patently much of the larger community, including portions of the area shown on the photographs introduced by the defendants, suffered nothing whatever from the material emitted from defendants' plant. That more than one, or in fact a considerable number closer to it, had the use and enjoyment of their property curtailed and restricted in the manner described does not mean that each of them have not received injury which differed in kind and not merely in degree from the community generally. If the holding urged were the rule, any nuisance affecting more than a small part of a community would have to be borne without injunctive remedy on behalf of those materially injured unless the public authorities act. "The number of the persons who are specially injured by a nuisance does not affect the right of action for such injury or make their injury identical with that of the public at large, but any of such persons may maintain an action for the nuisance; and the fact that several persons join in a suit to abate a public nuisance does not show that each of them may not have sustained such special injury as entitles him to relief." 66 C. J. S., Nuisances, § 79, p. 835.

We conclude the operation of the defendants' plant constituted a nuisance and that the plaintiffs suffered special injury from that operation which was peculiar to them and different in kind from that sustained by the public at large. Under the circumstances the plain-

tiffs could properly bring the action, and the trial court's judgment granting the injunction was proper. It is to be noted it did not enjoin the operation of the plant if it could be run without particles of sand, silicon, or other materials being carried onto any part of plaintiffs' premises.

Defendants' assignment of error that the damages were improperly allowed is without merit. The plaintiffs both testified that the annoyance and inconvenience hitherto set out affected them and their family and that of their tenant. The dust penetrated and settled on everything in their yards. Thomas Karpisek said at times it was one-sixteenth of an inch deep. He stated he painted his home and it settled on the paint and he was only able to get a portion of it off. Plaintiffs' rental property across from the home was bought in October 1960. Since then it was rented for $75 and but for debris from defendants' plant could have rented for $90. He stated his home property had depreciated in value several thousand dollars. The damages allowed were adequately proved and are in fact quite nominal. It is proper to take into consideration all the injuries and losses caused by the nuisance, such as the depreciation in the market or rental value of plaintiffs' property, and the discomfort, annoyance, and inconvenience in the use thereof. 66 C. J. S., Nuisances, § 170, p. 974. See, also, Walling v. City of Fremont, 138 Neb. 399, 293 N. W. 226.

The defendants assign as error that the trial court in its findings found that when the wind is from the "south, southwest, or southeast" particles of gravel and silicon were carried onto the plaintiffs' premises. An examination of the evidence discloses that the plaintiffs testified that their premises were subject to the debris when the wind was from the "north, northwest, or northeast" instead of a southerly direction. The testimony of other witnesses whose premises were northerly from the plant was to the effect they and not the plaintiffs were bothered by the southerly winds. The evi-

dence however clearly shows the injunction granted was justified and that the direction of the wind which caused the silicon to be carried onto the plaintiffs' premises was erroneously recited in the judgment. The other findings justified the judgment in any event. This case having been tried here de novo, the record in that respect, however, should be corrected.

In all other respects the judgment should be affirmed. The costs should be borne by the appellants.

AFFIRMED AS MODIFIED.