CITY OF SYRACUSE, A MUNICIPAL CORPORATION, APPELLEE, V.
FARMERS ELEVATOR, INC., A CORPORATION, ET AL.,
APPELLANTS.

157 N. W. 2d 394

Filed March 22, 1968.    No. 36718.

Baylor, Evnen, Baylor & Urbom and Donald R. Witt, for appellants.

Matthews, Kelley & Cannon, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an action by the city of Syracuse, Otoe County, Nebraska, a city of the second class, hereinafter called city, for a permanent injunction enjoining Farmers Elevator, Inc., a corporation, and Ervin Gellerman, hereinafter referred to as defendants or separately as corporation or Gellerman, from operating an anhydrous ammonia fertilizer distribution business on property owned by the corporation adjoining the city limits of said city. Gellerman is a director and the manager of defendant corporation.

In August 1966, defendants decided to enter the business of distributing anhydrous ammonia fertilizer in the Syracuse area. Gellerman approached members of the city council to learn their reaction to the operation of such business within the city limits. It became readily apparent that there was opposition to such proposal. Without further discussion with city officials, defendants decided to locate outside the city limits. On December 2, 1966, Gellerman made a contract for the purchase of the property herein, which adjoins other property owned by defendants. This property is 250 feet deep and adjoins the city on the south, directly across the street from a park area in which is located an agricultural exhibit building, a community hall or 4-H building, and an athletic field. On January 10, 1967, a deed for said property was issued to the corporation.

Sometime after Gellerman made his approach, city proceeded to adopt a comprehensive zoning ordinance

and included the one-half mile area surrounding the city. A public hearing was held on the ordinance January 4, 1967, and it was adopted with the emergency clause by a unanimous vote of the city council on January 14, 1967. A certificate of the city clerk attached to a pamphlet copy of the ordinance in evidence herein certifies to its passage, together with an attached zoning map, and the fact that it was published in pamphlet form by the authority of the city council. The city attorney, who took no part in these legal proceedings, was at all times pertinent herein the president of the corporation.

Gellerman, who had been authorized by the corporation to negotiate with wholesale distributors of anhydrous ammonia, eventually made contact with Allied Chemical and Dye Company, LaPlatte, Nebraska, hereinafter referred to as Allied. On January 6, 1967, Allied placed an anhydrous tank on the property in question, and partially filled said tank with anhydrous ammonia on January 9, 1967. The tank, which was purportedly leased from Allied, was merely set on some grader blades 25 feet from the south boundary line of the property. The corporation had given orders for other equipment necessary for the operation of an anhydrous ammonia business, but deliveries were stopped when a restraining order was issued January 19, 1967.

The storage tank was located 200 feet south of the city limits, 250 feet south of a row of trees north of the south city limits, 286 feet from the southeast corner of the agricultural exhibit building, 438 feet from the community hall or 4-H building, and 342 feet from the fence surrounding the athletic field. The bleachers for the athletic field are immediately north of the fence. In addition to the storage tank, when the business is in operation there will be smaller tanks, described as nurse tanks, on the premises. These are the tanks which are used to make delivery to the farms. These will necessarily be located in closer proximity to the areas described.

Exhibit 10, prepared by the Agricultural Ammonia

Institute, is stipulated to be the recognized minimum standards for the storage and handling of anhydrous ammonia. These standards provide that anhydrous ammonia containers should not be less than 400 feet from any school, hospital, or other place of public assembly. While the defendants sought to restrict the meaning of "public assembly," we interpret it to mean a company of persons collected together in one place, which is the definition given in Webster's New International Dictionary (2d Ed., Unabridged), p. 165. While the agricultural exhibit hall is only used by groups of people during an exhibition or fair, the athletic field and the 4-H building are used much more often. In any event, each of said areas on occasion is an area of public assembly.

Ammonia, because it is extremely hard to ignite, is generally considered to be nonflamable. It is, however, considered a dangerous substance, and exhibit 10 states that in the interests of safety it is important that any personnel handling ammonia understand its property and be thoroughly trained in safe practices for its storage and handling. The gas liquifies under pressure, but when pressure is released the liquid is readliy converted into a gas which is colorless but pungent, which pungency serves as a warning agent. Anhydrous ammonia may cause varying degrees of irritation of the skin or mucous membrane, and may severely injure the respiratory mucosa. While there is come conflict in the testimony as to how much if any gas escapes during the loading and unloading procedures, it is evident that there is some on many occasions. Exhibit 10 adequately suggests this possibility. The range of the effect, according to defendants' testimony, is 15 or 20 feet, but could be farther, depending upon the breeze. According to testimony for the city, its effect may range as far as one-eighth of a mile. There is no dispute that the gas will burn trees or crops if it comes in contact with them.

The issues tried herein involve the validity of the

ordinance, whether an anhydrous ammonia fertilizer distribution business in the area involved would create a nuisance, and whether the business was an existing nonconforming use before the zoning ordinance was enacted. After the conclusion of the evidence, the trial court inspected the area involved and subsequently found against the defendants on all three points. Defendants perfected this appeal.

Section 17-1001, R. R. S. 1943, provides, so far as material herein: "Cities of the second class and villages are hereby authorized and empowered to extend and apply by ordinance any existing, *or hereafter enacted,* zoning ordinances, property use regulation ordinances, building ordinances, electrical ordinances, and plumbing ordinances, to an area within one half mile of the corporate limits of such municipalities, with the same force and effect as if such area were within their corporate limits; * * *." (Italics supplied.)

Defendants argue that this section provides that only existing ordinances may be extended to the one-half mile zone. They argue: "The statute assumes that such ordinances are in existence at the time they are extended to the one-half mile zone, because if they are not in existence, they cannot be extended."

In the instant case, the city of Syracuse zoned the city and the one-half mile area in one comprehensive zoning ordinance. Defendants contend that the zoning ordinance in question is therefore invalid, and cite Schlientz v. City of North Platte, 172 Neb. 477, 110 N. W. 2d 58, to support their contention. Defendants quote the following language from that case: "The procedure prescribed by section 16-901, R. S. Supp., 1959, is not the enactment of any new ordinance or ordinances. What it does is to provide for the extension of the effective area of ordinances upon the particular subjects. The persons living in the area affected become subject to those ordinances upon those particular subjects." Section 16-901, R. S. Supp., 1959, now R. R. S. 1943, is an

identical statute applicable to cities of the first class. The first sentence of the statement was unnecessary in that case, and is merely dictum and not controlling herein.

Section 17-1001, R. R. S. 1943, is an enabling act empowering cities of the second class and villages to extend existing ordinances to the one-half mile area surrounding the municipal limits, but it does more. It authorizes the inclusion of this one-half mile area in all future ordinances. The phrase "or hereafter enacted" italicized above, makes this purpose clear. To apply any other construction is to ignore the obvious. So far as Schlientz v. City of North Platte, *supra,* holds otherwise, it is overruled.

Defendants' case, is further premised upon the contention that prior to the effective date of the ordinance they had purchased property, installed a storage tank, and made other commitments to such an extent that they acquired a vested interest in a nonconforming use. There is no merit to this contention.

"To obtain a vested interest in a nonconforming use, a person, prior to the effective date of the regulation or ordinance making such use nonconforming and while violating no existing law or regulation, must cause either substantial construction to be made thereon or incur substantial liabilities relating directly thereto, or both.

"A property owner who claims rights by virtue of a nonconforming use has the burden of proof to establish such nonconforming use." County of Saunders v. Moore, *ante* p. 377, 155 N. W. 2d 317.

Defendants have not met this burden. The property purchased adjoins other property owned by the defendants and undoubtedly can be used for other business purposes. Gellerman had considered its purchase 4 or 5 years before the attempt to establish an anhydrous ammonia business. There is no evidence to establish that a business was actually being conducted on the premises. The storage tank was on loan and was set on

grader blades. In this connection, the standards in exhibit 10 provide: "Containers shall be set upon firm foundations or otherwise firmly secured." The tank was partly filled, but the evidence is this was done merely to test it for leaks.

Defendants are not being enjoined from the operation of an anhydrous ammonia business, but solely from its operation on the present site. It will be a simple matter to transfer the tank and any other personal property for which defendants may be liable to a proper location on which they may operate the business. It is evident that defendants were fully informed at all times on the situation. Corporation's president was the city attorney during the discussions on the zoning ordinance. It is also apparent defendants were attempting to acquire a nonconforming use before the ordinance became effective. This they did not do. We suggest that defendants' position is not nearly so meritorious as that of the appellant in County of Saunders v. Moore, *supra,* in which a nonconforming use was denied.

It must be conceded that the business involved is a lawful one and that generally a legitimate business enterprise is not a nuisance per se. This does not mean, however, that it may not become a nuisance in fact. A legal and proper activity may be a nuisance in fact simply because of its location. The selection af a place of business is not necessarily left to the owner alone. That subject is often a matter of both private and public concern. Beisel v. Crosby, 104 Neb. 643, 178 N. W. 272. Also, a legitimate business may become a nuisance by reason of the conditions implicit in and unavoidably resulting from its operation. Sarraillon v. Stevenson, 153 Neb. 182, 43 N. W. 2d 509, 18 A. L. R. 2d 1025. It is on this basis that city contends the anticipated business is a nuisance.

The standards embraced in exhibit 10 are stipulated to be minimal requirements. The testimony indicates that the prevailing winds in the area during the periods

of greatest activity for this type of business are from a southerly direction. This means that any escaping gas would necessarily be carried toward the city area heretofore described. The trial court, who inspected the premises, specifically found that operating an anhydrous ammonia business on the property in question "would produce destructive vapors and noxious odors resulting in material injury to property and the comfort or existence of those in the immediate vicinity and that the pollution or contamination of the air through such odors would be injurious to persons and would materially, unlawfully and injuriously affect the comfort, enjoyment and property rights of others." On the record herein, we cannot say that the trial court erred in reaching this conclusion. Rather, we think it did not.

We further hold that it was not necessary for city to wait until the operation of the anticipated business demonstrated that its use was a nuisance. The rule is well settled that a court of equity has jurisdiction to enjoin a threatened injury whenever its nature is such that it cannot be adequately compensated in damages and its continuance would occasion a constantly recurring grievance. Lowe v. Prospect Hill Cemetery Assn., 58 Neb. 94, 78 N. W. 488, 46 L. R. A. 237. We agree with the trial court that the operation of an anhydrous ammonia installation on the premises in question would constitute a nuisance and should be enjoined.

Defendants question the right of city under section 17-556, R. R. S. 1943, to proceed herein by injunction because the alleged nuisance is located outside the city limits and not in any residential district. Defendants further question the enforceability of the city ordinance on the date of the filing of the action herein. We suggest that section 17-123, R. R. S. 1943, is applicable herein, and makes it unnecessary to discuss either of these points. By this section city is given the power to prevent and remove nuisances. In Village of Kenesaw v. Chicago, B. & Q. R.R. Co., 91 Neb. 619, 136 N. W. 990,

this court held in substance that it was not incumbent upon city to enact an ordinance prohibiting a nuisance before it has a right to apply to a court of equity for relief.

For the reasons given above, the judgment entered by the trial court is correct and is affirmed.

AFFIRMED.