[No. 109-40767-2.   Division Two.   May 13, 1970.]

ALAN TINSLEY, *Respondent,* v. MONSON & SONS CATTLE CO., INC., *Appellant.*

676

*Tonkoff, Holst, Hanson & Dauber* and *J. P. Tonkoff,* for appellant.

*Felthous, Brachtenbach & Peters* and *Robert A. Felthous,* for respondent.

PETRIE, J.—Plaintiff instituted this action alleging defendant's operation of a cattle feedlot adjacent to plaintiff's property constitutes a nuisance, seeking abatement thereof and damages allegedly sustained by reason of loss of his comfortable enjoyment of life and property and by reason of loss in reasonable market value of his property. Defendant denied maintenance of a nuisance and by way of affirmative defense alleged establishment of a legitimate business prior to plaintiff's purchase of property adjacent to the feedlot and further alleged that any inconvenience experienced by plaintiff is a reasonably necessary and expectable consequence occasioned by the conduct of defendant's business.

After trial to the court, findings of fact, conclusions of law and judgment in favor of plaintiff were entered on October 18, 1968. The judgment declared defendant's feedlot operation a private nuisance with respect to plaintiff and also a public nuisance specially injurious to plaintiff; ordered specified pens be no longer used "on the same scale and to the same degree" as before; granted defendant a reasonable time to effect manure removal in an attempt to eliminate "fly, odor and manure-dust problems"; awarded plaintiff damages in amount of $500 (presumably for loss of comfortable enjoyment of life and property); reserved until a later date determination of damages by reason of depreciation in market value of plaintiff's property; and retained continuing jurisdiction over the cause until fur-

ther order of the court. Defendant filed written notice of appeal on November 15, 1968.

Notwithstanding the filing of the notice of appeal, the court conducted a further hearing in the matter on November 18, 1968, and subsequently entered another judgment on February 14, 1969. Again defendant appealed and both appeals, pursuant to stipulation of the parties, have been consolidated by order of the Supreme Court prior to transfer of the cause to this court.

■ Preliminarily, we should note that any attempted proceedings in the superior court subsequent to filing of the notice of appeal on November 15, 1968, occurred after the trial court lost jurisdiction over the proceedings. Rule on Appeal I-15 (formerly ROA 15); *Sanwick v. Puget Sound Title Ins. Co.,* 70 Wn.2d 438, 423 P.2d 624 (1967). Hence, any judgment based upon such proceedings is void and unenforceable. *Phillips v. Wenatchee Valley Fruit Exch.,* 124 Wash. 425, 214 P. 837 (1923). We consider, therefore, solely the issues presented by defendant's appeal from the court's judgment of October 18, 1968.

■ Defendant has assigned no error to any of the court's findings of fact. They are, therefore, the established facts of the case. *Lewis v. Scott,* 54 Wn.2d 851, 341 P.2d 488 (1959). Defendant's assignments of error go only to (1) the court's determination that the feedlot operation constituted a nuisance, public or private, and (2) the court's partial restriction on the use of defendant's property. The general issue presented by this appeal, therefore, is simply to determine whether or not the established facts, which must be accepted as verities, support the court's conclusions of law.

It would serve no useful purpose to detail the court's findings of fact. Suffice it to say that since August, 1966, circumstances in a portion of Selah Valley have been somewhat less than idyllic. In 1963 plaintiff purchased a house and lot adjoining property owned by defendant and has resided thereon ever since. In 1966 defendant corporation converted a portion of its acreage—which had previously (even before 1963) been used for grazing and occasionally

for feeding from temporary bunkers of concentrated feed —to a series of nine permanent feeding pens for high concentrated feeding operations. One of those pens was approximately 40 feet from plaintiff's property. Despite defendant's operations having been conducted in the customary manner for such a business, the pens have been kept in an unclean and filthy condition, animal refuse has been deposited in the pens, and has remained there, until offensive and nauseating odors and flies filled the air in and about plaintiff's house. At times the odor became so bad it produced loss of appetite and nausea to plaintiff and his family.

The area adjacent to plaintiff's residence and lying to the south and west is, and has been for many years, primarily residential in nature. The area south of defendant's property is both residential and agricultural. The overall area is one primarily involved in agricultural pursuits or the processing of agricultural products, none of which, with the exception of defendant's cattle feeding operation, is offensive to or interferes with the comfortable enjoyment of life and property.

Under those facts, we must agree with the trial court's conclusion that defendant's use of his property at the time of trial constituted an unreasonable use thereof, producing substantial harm to plaintiff. The court, therefore, properly invoked its equity powers to impose a partial—and extremely limited—restriction on the use of defendant's land, seeking to effect an abatement of the nuisance, pending further development of the situation. *Morin v. Johnson*, 49 Wn.2d 275, 300 P.2d 569 (1956); *Riblet v. Spokane-Portland Cement Co.*, 41 Wn.2d 249, 248 P.2d 380 (1952).

Defendant contends vigorously—and with considerable logic to support its argument—that a decision of the Supreme Court of Kansas, refusing to permanently enjoin a cattle feedlot business conducted under similar conditions as defendant's business has been conducted, warrants reversal of the trial court's judgment. *Dill v. Excel Packing Co.*, 183 Kansas 513, 331 P.2d 539 (1958). There is consider-

able similarity between the facts in *Dill* and the facts in the case at bar; and certainly both cases rather graphically portray the social conflicts which arise among neighbors when a modern feedlot operation is installed in relatively close proximity to existing residences, whether the area be primarily residential or primarily agricultural. It seems apparent, however, that the court in *Dill* refused to exercise equitable powers to abate a noisome situation because: (1) the trial court had *permanently* enjoined the defendant's operation of a cattle feedlot business, the only relief sought by plaintiff; and (2) the area surrounding the feedlot was primarily agricultural, with the exception of a few suburban tracts with homes. We think both reasons distinguish *Dill* from the case at bar.

The trial court's findings in this case demonstrate that the area in the immediate vicinity of these pens was either primarily residential or at least mixed residential and agricultural. Furthermore, the trial court, by suggesting possible changes in defendant's method of operation and by continuing to reserve jurisdiction of the matter, clearly sought to avoid the harshness attendant upon immediate and full imposition of the court's equity powers. In this, we believe the trial court quite appropriately balanced the respective equities, and concluded that as a matter of law, following entry of findings of fact, defendant's feedlot operations did—at or about the time of trial—constitute an actionable nuisance requiring partial use of the court's powers of abatement.

The judgment of October 18, 1968, is affirmed; the judgment of February 14, 1969, is set aside and held for naught; and the case is remanded for further exercise of the court's continued jurisdiction in such manner as the parties may present the matter consistent herewith.

ARMSTRONG, C. J., and PEARSON, J., concur.

Petition for rehearing denied June 8, 1970.