GLENN E. BOTSCH ET AL., APPELLANTS, v. LEIGH LAND COMPANY, A NEBRASKA CORPORATION, ET AL., APPELLEES.

236 N. W. 2d 815

Filed December 24, 1975. No. 40071.

William A. Wieland of Healey, Healey, Brown, Wieland & Burchard and Fredrick L. Swartz, for appellants.

Joseph Ginsburg of Ginsburg, Rosenberg, Ginsburg & Krivosha and Steven J. Flodman of Barlow, Watson & Johnson, for appellees.

Heard before WHITE, C. J., McCOWN, NEWTON, and CLINTON, JJ., and KUNS, Retired District Judge.

NEWTON, J.

Plaintiffs are the owners and occupants of a farm in Colfax County, Nebraska, upon which they conduct normal farming operations and a small livestock enterprise consisting of the raising of purebred cattle and the feed-

ing of a small number of hogs and cattle. To the south, directly across the road from plaintiffs' farm-building site, the defendants have built cattle yards or pens in which they have fed from 408 to 3,746 head of cattle simultaneously. Four lagoons are maintained to catch the runoff of water and manure from the feedlot. Plaintiffs seek an injunction due to offensive odors, dust, and insects originating on the defendants' premises. At the conclusion of plaintiffs' evidence, the trial court dismissed their petition. We reverse that judgment and remand the cause for further proceedings.

Plaintiffs' assignment of errors is directed primarily at the finding of the court that as a matter of law a nuisance did not exist and a failure to prove negligent operation. In its memorandum opinion the court stated that plaintiffs were subjected to intolerable odors in the use, comfort, and enjoyment of their dwelling and farmstead and suffered from a substantial increase in flies, all due to defendants' feeding operation and maintenance of the lagoons. These findings are amply sustained by the record.

Ordinarily a legitimate business enterprise is not a nuisance per se, but it may become a nuisance in fact. It may become such by reason of the conditions implicit in and unavoidably resulting from its operation or because of the manner of its operation. See, City of Syracuse v. Farmers Elevator, Inc., 182 Neb. 783, 157 N. W. 2d 394; Sarraillon v. Stevenson, 153 Neb. 182, 43 N. W. 2d 509, 18 A. L. R. 2d 1025.

The exercise of due care by the owner of a business in its operation is not a defense to an action to enjoin its operation as a nuisance. See, Sarraillon v. Stevenson, *supra;* 58 Am. Jur. 2d, Nuisances, § 34, p. 597.

The existence of the conditions revealed by the record in this case clearly establishes that defendants' feeding activities, as operated, constituted a nuisance. The odors generated by the lagoons and the manure dust, together with the insects resulting from failure to remove

manure, have rendered plaintiffs' premises well-nigh un-inhabitable and the reduction in the number of cattle fed in recent months, due to unfavorable cattle prices or other conditions, cannot defeat this action when the potential for larger operations remains.

Defendants assert that since livestock feeding is essentially a rural activity and their project is located in a rural area, it cannot be denominated a nuisance and enjoined. It is true that rural residents must expect to bear with farm and livestock conditions normally found in the area where they reside. In the area under consideration almost every farm has a relatively small cattle-feeding operation but nothing approaching in size the defendants' large commercial operation or resulting in comparable objectionable features. Even in an industrial or rural area one cannot conduct a business enterprise in such manner as to materially prejudice a neighbor. In Horn v. Community Refuse Disposal, Inc., 186 Neb. 43, 180 N. W. 2d 691, this court indicated that a dump yard in a rural area could become a nuisance if not properly operated. In Karpisek v. Cather & Sons Constr., Inc., 174 Neb. 234, 117 N. W. 2d 322, this court approved the enjoining of the operation of an asphalt plant in an industrial area. In Chicago, R. I. & P. R. R. Co. v. Liddle, 253 Iowa 402, 112 N. W. 2d 852, it was held that stockyards in an industrial area were not a nuisance per se but could be conducted so as to become a nuisance. In Albaugh v. Abbott, 253 Mich. 588, 235 N. W. 263, the feeding of garbage to pigs in a rural area was enjoined. In Bedford v. City of Cleveland Heights, 18 Ohio Op. 319, 32 Ohio L. Abs. 233, a similar operation was enjoined. The case of Baldwin v. McClendon, 292 Ala. 43, 288 So. 2d 761, is almost identical to the one before us. A large hog-raising operation, with lagoons, located in a strictly farm area was held to be a nuisance. The waste material in the lagoons generated offensive odors. The court held: "Fact that hog-raising operation was carried on in a rural community given over

almost entirely to agricultural pursuits was a factor to be considered in determining whether odors emanating from the property constituted a nuisance, but there were other factors, including proximity of the operation to neighbors' home, intensity and volume of odors, their interference, if any, with neighbors' own well-being and enjoyment of their home, and any consequential depreciation in the value of the home." The court further stated: "Moreover, assuming that the appellants' operation met some set of sanitary standards for similar operations, this would not affect the appellees' right to equitable relief, because the issue is not whether the appellants were negligent, * * * or their business lawful, but whether or not from the inherent qualities of the business, or the manner in which it is conducted, it directly causes substantial injury to the properties of the appellees, or produces material annoyance and inconvenience to them in the comfortable enjoyment of their home." See, also, § 28-1016, R. S. Supp., 1974; Tinsley v. Monson & Sons Cattle Co., Inc., 2 Wash. App. 675, 472 P. 2d 546; Kuhn v. Wood, 34 Ohio L. Abs. 265, 36 N. E. 2d 1006; Yeager & Sullivan, Inc. v. O'Neill (Ind. App.), 324 N. E. 2d 846.

"A court of equity will not usually enjoin the operation of a lawful business without regard to how serious may be the grievance caused thereby. In the first instance, at least, it will require the cause of the grievance to be corrected and will enjoin the conduct of the enterprise perpetually after it has been proven that no application of endeavor, science, or skill can effect a remedy or that the owners cannot be induced to conduct it properly." Prauner v. Battle Creek Coop. Creamery, 173 Neb. 412, 113 N. W. 2d 518.

The lagoons maintained by defendants, as presently operated, clearly constitute a nuisance and must either be operated in a manner abating the odors complained of or destroyed. The feed yards must be kept reasonably clean with a view to reducing to a reasonable

minimum the propagation of flies or other insects and dust from manure. In the event it appears that plaintiffs can be adequately compensated in damages, the dispensing with an injunction should be conditioned on the actual payment of damages assessed.

The judgment of the District Court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

McCOWN, J., dissenting.

The majority opinion tacitly concedes that the evidence fails to establish negligence by the defendants in operating the feedlots. The majority opinion also concedes that in the rural agricultural area involved here "almost every farm has a relatively small cattle-feeding operation."

The record shows that the Department of Environmental Control of the State of Nebraska and its Agricultural Pollution Control Division made inspections of defendants' feedlots both in 1973 and 1974, and determined that the operation of the feedlots here was not in violation of any rules and regulations of the department pertaining to livestock waste control. The chief of the Agricultural Pollution Control Division also testified that controls on waste handling and removal systems were not required by the department unless the wastes polluted the waters of the state or created a nuisance. The inevitable conclusion is that under the departmental rules a nuisance did not exist at the times of the inspections.

The evidence also establishes that there are several feedlots in the immediate area with capacity of 300 to 500 head, and many of lesser capacity. At least one feedlot with a capacity of 10,000 head is located some 14 miles south of the location of these feedlots. Cattle had been kept on the area now used by defendants' feedlots for approximately 90 years. As early as 1946, there were some 1,100 head of cattle on feed there. Two of the dams involved here had been constructed more

than 20 years prior to trial. Two more were added in 1969. The defendants' operation at its peak averaged approximately 3,000 head in 1972. Since that time there was a gradual diminution of cattle until, in November and December of 1974, the total number kept in the defendants' feedlots was approximately 300.

The District Court specifically found that the feedlots operated by the defendants are not a nuisance per se and that there was insufficient evidence upon which to base a finding of negligence, and granted defendants' motion to dismiss. The majority opinion now holds that evidence of intolerable odors on many days and a substantial increase in the number of flies is sufficient to constitute a prima facie case for the granting of a mandatory injunction against a cattle feedlot operation conducted without negligence in the rural agricultural area of Nebraska. Apparently the court has somehow taken judicial notice that a large cattle feeding operation can be reasonably conducted without excessive odors or flies. The record will not support that conclusion, nor does it warrant the granting of injunctive relief here.

WHITE, C. J., joins in this dissent.