GLENN E. BOTSCH ET AL., APPELLANTS, V. LEIGH LAND COMPANY, A NEBRASKA CORPORATION, ET AL., APPELLEES.

239 N. W. 2d 481

Filed March 4, 1976. No. 40071.

William A. Wieland of Healey, Healey, Brown, Wieland & Burchard and Fredrick L. Swartz, for appellants.

Joseph Ginsburg of Ginsburg, Rosenberg, Ginsburg & Krivosha, for appellee Leigh Land Co. et al.

Steven J. Flodman of Barlow, Watson & Johnson, for appellee Folken.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

NEWTON, J.

On rehearing this case has been heard before the full court. The former opinion filed is withdrawn. See *ante* p. 54, 236 N. W. 2d 815.

Plaintiffs are the owners and occupants of a farm in Colfax County, Nebraska, upon which they conduct normal farming operations and a small livestock enterprise consisting of the raising of purebred cattle and the feeding of a small number of hogs and cattle. To the south, directly across the road from plaintiffs' farm-building site, the defendants have built cattle yards or pens in which they have fed from 408 to 3,746 head of cattle simultaneously. Four lagoons are maintained to catch the runoff of water and manure from the feedlot. Plaintiffs seek an injunction due to offensive odors, dust, and insects originating on the defendants' premises. At the conclusion of plaintiffs' evidence, the trial court dismissed their petition. We reverse that judgment and remand the cause for further proceedings.

Plaintiffs' assignment of errors is directed primarily at the finding of the court that as a matter of law a nuisance did not exist and that there was a failure to prove negligent operation. In its memorandum opinion the court stated that plaintiffs were subjected to intolerable odors in the use, comfort, and enjoyment of their dwelling and farmstead and suffered from a substantial increase in flies, all due to defendants' feeding operation and maintenance of the lagoons. These findings are amply sustained by the record.

The evidence establishes the following additional facts. The Leigh Land Company, in which the defendants Roland Langemeier, Kermit Wagner, and Leroy Folken are stockholders, leased a tract of land from the defendants Folken. On the leased land feedlots were constructed with two ponds to catch runoff water and manure. Later two more ponds were constructed on the Folken land in an area not covered by the lease. The ponds are almost directly across the road from

plaintiffs' farm home. Drainage through the entire feed-lot is to the west into the ponds. The Folken premises, where as many as 1,100 head of cattle are fed, lies to the east of the feedlot, but drains through it into the ponds. The Folkens' individual feeding is not an issue in this case and they are included as defendants because they conduct the feeding operation in the Leigh Land Company lots for the other defendants and because they own the unleased area where two of the ponds are located. Manure accumulating in the feedlots was not ordinarily removed, but was piled up into large mounds.

Dust from the feedlots frequently blew across to plaintiffs' premises in considerable volume. Large numbers of flies were attendant on the feeding operations and infected plaintiffs' premises in large numbers. Odors originating in the ponds were very obnoxious and continuously present. One witness described the odor as a stagnant smell and stated he would not like to live next door to it. Another said the smell was "pretty stout," might make some people sick, and that he could not stand it all the time. Another stated that the odor penetrated clothing, and with the flies made it impossible for the plaintiffs to enjoy their lawn. Another said she found the smell "atrocious" and closed her car windows when passing by. Another said that the condition was such that he would not live on the plaintiffs' farm. Another neighbor said that on one occasion the smell was so bad that he and his wife left their home temporarily. Another said the smell was worse than from a dead animal and the flies were bad, so that he would not live on plaintiffs' farm. Another described it as a "dead sour smell" that "almost kills you." A representative of the Department of Environmental Control stated he had inspected the feedlot premises. He testified that the department was not concerned with air pollution and that the ponds were adequate to prevent pollution of a stream into which the area drained.

The evidence amply sustains the finding of the court that plaintiffs were subjected to intolerable odors and a substantial increase in flies due to defendants' operation.

The trial court found that as a matter of law a nuisance did not exist and appears to have based that finding on the theory that plaintiffs had to prove a negligent or improper operation of the feedlot. This conception of the law is erroneous.

Section 28-1016, R. S. Supp., 1974, makes it a criminal offense for anyone to use or maintain any place for the exercise of any trade or business which, "by occasioning noxious exhalations, noisome or offensive smells, becomes injurious and dangerous to the health, comfort or property of individuals or the public." Chapter 81, article 15, of the Nebraska statutes comprises the Environmental Protection Act. Section 81-1501, R. R. S. 1943, states its purpose is the conservation of the water, land, and air of the state and states: "To achieve and maintain such a reasonable degree of purity of the natural atmosphere of this state that human beings and all other animals and plants which are indigenous to this state will flourish in approximately the same balance as they have in recent history; and to promulgate laws, rules and regulations and enforce uniformly the same in such a manner as to give meaningful recognition to the protection of each element of the environment, air, water and land." The statutes referred to make it the definite responsibility of the Department of Environmental Control to prevent pollution, not only of the waters of this state, but also of the air and land of the state. Section 81-1506, R. S. Supp., 1974, makes it unlawful for any person: "(a) To cause pollution of any air, waters or land of the state or to place or cause to be placed any wastes in a location where they are likely to cause pollution of any air, waters or land of the state; or (b) To discharge or emit any wastes into any air, waters or land of the state which reduce the

quality of such air, waters or land below the air, water or land quality standards established therefor by the council. Any such action is hereby declared to be a public nuisance."

What is meant when it is said that a lawful business will not be enjoined in the absence of evidence that it is operated improperly? A feed yard question was presented in Francisco v. Furry, 82 Neb. 754, 118 N. W. 1102. In that case the court said: "The corruption of the atmosphere by the exercise of any trade or by any use of property that impregnates it with noisome stenches has ever been regarded as among the worst class of nuisances. The right to have the air floating over one's premises free from noxious and unnatural impurities is a right as absolute as the right to the soil itself * * *. A feeding yard is not necessarily a nuisance and it becomes such only by being improperly maintained or conducted. There is nothing in the evidence showing it to be impossible to maintain the yard in question in such a manner as to free it from the objections which the plaintiffs make. The situation of the yard is favorable to its being conducted in a cleanly and proper manner. That the defendants should be enjoined from conducting their business in the yard in such a manner as to make it a nuisance cannot be denied; but, when the court goes beyond this and limits the time of its use for keeping cattle or hogs, or the number to be kept, we think that it has extended its decree beyond proper bounds. Until it is shown that the yard cannot be maintained as a feeding yard without becoming a nuisance, the feeding of cattle therein should not be enjoined. The order of the court should go no further than to enjoin the defendants from making a nuisance of their feed yard." It will be noted that the court did enjoin the operation of the feed yard in such a manner as to create a nuisance. In other words, the court enjoined the nuisance, but not the lawful business operation. When a lawful business is operated in such a

manner as to become a nuisance it is operated improperly. Proof of the existence of a nuisance establishes that the business has been operated negligently or improperly.

Ordinarily a legitimate business enterprise is not a nuisance per se, but it may become a nuisance in fact. It may become such by reason of the conditions implicit in and unavoidably resulting from its operation or because of the manner of its operation. See, City of Syracuse v. Farmers Elevator, Inc., 182 Neb. 783, 157 N. W. 2d 394; Sarraillon v. Stevenson, 153 Neb. 182, 43 N. W. 2d 509, 18 A. L. R. 2d .1025.

The exercise of due care by the owner of a business in its operation is not a defense to an action to enjoin its operation as a nuisance. See, Sarraillon v. Stevenson, *supra*; 58 Am. Jur. 2d, Nuisances, § 34, p. 597.

Prima facie, the existence of the conditions revealed by the record in this case clearly establishes that defendants' feeding activities, as operated, constituted a nuisance. The odors generated by the lagoons and the manure dust, together with the insects resulting from failure to remove manure, have rendered plaintiffs' premises well-nigh uninhabitable and the reduction in the number of cattle fed in recent months, due to unfavorable cattle prices or other conditions, cannot defeat this action when the potential for larger operations remains.

Defendants assert that since livestock feeding is essentially a rural activity and their project is located in a rural area, it cannot be denominated a nuisance and enjoined. It is true that rural residents must expect to bear with farm and livestock conditions normally found in the area where they reside. In the area under consideration almost every farm has a relatively small cattle-feeding operation, but nothing approaching in size the defendants' large commercial operation or resulting in comparably objectionable features. Even in an industrial or rural area one cannot conduct a business en-

terprise in such manner as to materially prejudice a neighbor. In Horn v. Community Refuse Disposal, Inc., 186 Neb. 43, 180 N. W. 2d 691, this court indicated that a dump yard in a rural area could become a nuisance if not properly operated. In Karpisek v. Cather & Sons Constr., Inc., 174 Neb. 234, 117 N. W. 2d 322, this court approved the enjoining of the operation of an asphalt plant in an industrial area. In Chicago, R. I. & P. R. R. Co. v. Liddle, 253 Iowa 402, 112 N. W. 2d 852, it was held that stockyards in an industrial area were not a nuisance per se but could be conducted so as to become a nuisance. In Albaugh v. Abbott, 253 Mich. 588, 235 N. W. 263, the feeding of garbage to pigs in a rural area was enjoined. In Bedford v. City of Cleveland Heights, 18 Ohio Op. 319, 32 Ohio L. Abs. 233, a similar operation was enjoined. The case of Baldwin v. McClendon, 292 Ala. 43, 288 S. 2d 761, is almost identical to the one before us. A large hog-raising operation, with lagoons, located in a strictly farm area was held to be a nuisance. The waste material in the lagoons generated offensive odors. The court held: "Fact that hog-raising operation was carried on in a rural community given over almost entirely to agricultural pursuits was a factor to be considered in determining whether odors emanating from the property constituted a nuisance, but there were other factors, including proximity of the operation to neighbors' home, intensity and volume of odors, their interference, if any, with neighbors' own well-being and enjoyment of their home, and any consequential depreciation in the value of the home." The court further stated: "Moreover, assuming that the apellants' operation met some set of sanitary standards for similar operations, this would not affect the appellees' right to equitable relief, because the issue is not whether the appellants were negligent, * * * or their business lawful, but whether or not from the inherent qualities of the business, or the manner in which it is conducted, it directly causes substantial injury to the

properties of the appellees, or produces material annoyance and inconvenience to them in the comfortable enjoyment of their home." See, also, § 28-1016, R. S. Supp., 1974; Tinsley v. Monson & Sons Cattle Co., Inc., 2 Wash. App. 675, 472 P. 2d 546; Kuhn v. Wood, 34 Ohio L. Abs. 265, 36 N. E. 2d 1006; Yeager & Sullivan, Inc. v. O'Neill (Ind. App.), 324 N. E. 2d 846.

The Nebraska statutes make it clear that defendants' operation constitutes a nuisance and the fact that the Department of Environmental Control saw fit to ignore the air and insect pollution features cannot excuse its maintenance. It may be noted that the statutes do not distinguish between rural and urban areas. They prohibit the generation of conditions injurious to the "health, comfort or property of individuals or the public." A rural home and a rural family, within reason, is entitled to the same relative protection as others. The fact that the residence is in a rural area requires an expectation that it will be subjected to normal rural conditions but not to such excessive abuse as to destroy the ability to live in and enjoy the home, or reduce the value of the neighboring property.

In the case of Sarraillon v. Stevenson, *supra,* this court held: "There is no reasonable doubt but that appellants have used their property for purposes and in a manner which deprives appellees and other residents of normal and ordinary sensibilities living in the area around it of the reasonable and comfortable use of their property, and so that the accepted law of decency is violated and the value of their property because thereof has been substantially depreciated. Complete freedom and full use and enjoyment of home life in the neighborhood has been limited if not destroyed. A court of equity has jurisdiction to enjoin such a use of private property when its continuance would occasion a constantly occurring grievance. * * * There is no difference in effect between a physical invasion which limits the use of or destroys the property and an in-

vasion by permeating or by noise and insects that results in the same kind of a limitation of use or depreciation of property. A legitimate industry is generally not a nuisance, but it may become a nuisance in fact by reason of the manner of its operation and conditions implicit in and that unavoidably result from its operation, especially in a residential or other closely occupied area."

"A court of equity will not usually enjoin the operation of a lawful business without regard to how serious may be the grievance caused thereby. In the first instance, at least, it will require the cause of the grievance to be corrected and will enjoin the conduct of the enterprise perpetually after it has been proven that no application of endeavor, science, or skill can effect a remedy or that the owners cannot be induced to conduct it properly." Prauner v. Battle Creek Coop. Creamery, 173 Neb. 412, 113 N. W. 2d 518.

On the evidence thus far submitted, it appears that the lagoons and the manner of handling manure constitute a nuisance. Defendants have not as yet introduced evidence and it may be that they can successfully rebut plaintiffs' evidence of a nuisance. If no nuisance is finally established, judgment must be for the defendants; however, if a nuisance is finally established but it is shown that the nuisance-creating factors may be dispensed with by enlarging or otherwise handling the lagoons, removing manure or other means, then the nuisance only but not the feeding business would be subject to injunction.

The judgment of the District Court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

McCOWN, J., dissenting.

The majority opinion now holds that evidence of intolerable odors and a substantial increase in flies is sufficient to constitute a prima facie case for the granting of a mandatory injunction against a cattle feedlot op-

eration in a wholly rural area, without any evidence that a cattle feedlot can be operated in a different method or manner which will not produce excessive odors and flies.

The court assumes that feeding 1,100 cattle does not constitute a nuisance, but the feeding of 3,746 cattle does. That in itself would not constitute a problem if there were evidence to establish that a feedlot of a larger size could be operated in a fashion which would not produce odors and flies to the degree that it constituted a nuisance. That evidence is wholly lacking here and the majority opinion simply assumes that a large cattle feeding operation can be reasonably conducted without excessive odors and flies. The record wholly fails to establish that fact, and there is no basis whatever for taking judicial notice of facts which the plaintiffs failed to prove. Plaintiffs had their opportunity to prove those facts and did not do so. They failed to establish a prima facie case and there is no justification for letting them try again.

For other matters involved, see my dissent in Botsch v. Leigh Land Co., *ante* p. 54, 236 N. W. 2d 815.

WHITE, C. J., joins in this dissent.